UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CATHY WALKER,

                    Plaintiff,                    **MEMORANDUM & ORDER**
                                                  19-CV-4742 (RPK)


          v.


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

Plaintiff Cathy Walker challenges the Commissioner of Social Security's determination that she is ineligible for Supplemental Security Income ("SSI") benefits because she is not disabled.  Plaintiff and the Commissioner each moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  For the reasons below, plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

### I.  Eligibility Review for Supplemental Security Income Applications

Supplemental security income is available to "disabled" people.  42 U.S.C. § 1381 *et seq.* A person is "disabled" when:

> [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A).  The "impairment" must stem from "anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 1382c(a)(3)(D).

1

The Commissioner determines whether a claimant meets the statutory definition of "disabled" in five steps. If "an individual is found to be disabled (or not) at any step, the Commissioner is not required to proceed to the next step." *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The five-step disability analysis proceeds as follows:

- **Step One.** The Commissioner must first determine that the claimant is not "presently employed." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1520(b), 416.920(b).

- **Step Two.** If the claimant is not employed, the Commissioner must then determine that the claimant has a "severe impairment" that limits his or her capacity to work. *Brown*, 174 F.3d at 62; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).

- **Step Three.** If the Commissioner finds the claimant has a severe impairment, the Commissioner next considers whether "the claimant has an impairment that is listed in Appendix 1" to 20 C.F.R. Part 404, Subpart P. *Brown*, 174 F.3d at 62; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d). When the claimant has a listed impairment, the Commissioner will deem the claimant disabled and conclude the disability analysis. *Brown*, 174 F.3d at 62; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

- **Step Four.** If the claimant does not have a listed impairment, the Commissioner must determine whether "the claimant possesses the residual functional capacity to perform [his or] her past relevant work." *Brown*, 174 F.3d at 62; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e).

- **Step Five.** Finally, if the claimant is unable to perform his or her past relevant work, the Commissioner determines whether "the claimant is capable of performing any other work." *Brown*, 174 F.3d at 62; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden of proof for this analysis lies with the claimant for the first four steps of the inquiry but shifts to the Commissioner for the final step. *Brown*, 174 F.3d at 62. Even when the claimant bears the burden of proof, the Commissioner has an affirmative duty to develop the record because the review process is "essentially non-adversarial." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). Failure by the Commissioner to "fully develop[] the factual record" constitutes "legal error." *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999).

As the Commissioner proceeds through the five-step analysis, she is also required to consider four categories of evidence. *Brown*, 174 F.3d at 62. These categories are (**i**) "the objective medical facts"; (**ii**) "diagnoses or medical opinions based on such facts"; (**iii**) "subjective evidence of pain or disability testified to by the claimant or others"; and (**iv**) "the claimant's educational background, age, and work experience." *Ibid.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

## II.    Plaintiff's Supplemental Security Income Application

Plaintiff applied for social security disability and supplemental security income disability benefits under Titles II and XVI on June 16, 2016. Certified Administrative Record 150-160 ("AR"). In her application, plaintiff alleged that she had been disabled due to lupus since April 12, 2015. AR 150, 202. Plaintiff had worked as a "janitorial servicer" for ABM Janitorial Services from 2003 until September 1, 2015. AR 67, 176, 179. The Social Security Administration initially denied plaintiff's application for benefits on August 4, 2016. AR 75. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). AR 88-89.

## III.    The Administrative Hearing

ALJ Kevin Kenneally presided over the July 16, 2018 administrative hearing. AR 25. Plaintiff attended the administrative hearing via video teleconference. *Ibid*. At the hearing, the ALJ noted a "grave concern" about the fact that the record lacked any medical evidence concerning the two years prior to the hearing. AR 26. The ALJ confirmed with the plaintiff that for the last two years she has only seen two medical providers, nephrologist Dr. Kermilde Jean-Jerome and rheumatologist Dr. Felicia Tenedios-Karanikolas. AR 27-28, 364-66, 647-48. The ALJ decided to leave the record open for thirty days, *see* AR 28, and ordered the plaintiff to

attend an internal medicine consultative examination, AR 45.  Plaintiff also asked to amend the record to allege a disability onset date of September 1, 2015, which the ALJ granted.  AR 30-31.

Plaintiff testified that she completed high school "in the past fifteen years" and has worked "very little."  AR 29-30. Plaintiff testified that she was diagnosed with lupus in April 2015 and that as a result she "can't do as much as [she] want[s] to" and can't work because the lupus "hurts [her] joints."  AR 32.  Plaintiff testified that she did not experience joint pain or swelling "every day" but only "sometimes," AR 32-33, though she later testified that her joint problems affected her abilities to stand and walk about every day, AR 37.  Plaintiff testified that she took medication for her lupus and high blood pressure, and that the latter made her "drowsy and dizzy."  AR 35-36.  Plaintiff testified that she could walk for "about two blocks" on a smooth, flat surface without stopping, uses her umbrella as a cane when she walks outside, could stand for fifteen to twenty minutes before having to sit, and could sit for about thirty minutes before experiencing joint pain.  AR 37-38.  Plaintiff testified that she was able to lift up to five pounds, get dressed, and take the bus to the doctor.  AR 39-42.  Plaintiff testified that her husband and two sons have to help her with the cooking, and that plaintiff could take her daughter to school in the morning but could not pick her up in the afternoon because the sun aggravated plaintiff's symptoms.  AR 39-42.  Plaintiff testified that she naps for two hours during the day, about three days per week, because she does not sleep well at night due to her blood pressure medication.  AR 42-44.

The ALJ solicited testimony from a vocational expert about plaintiff's employment prospects.  AR 45-59.  The ALJ posed a series of hypotheticals to the vocational expert.  *Ibid.* The ALJ first asked the vocational expert which, if any, occupations would be available to an individual of the plaintiff's age and education with no past work experience "who can perform a

full range of light work as defined in the regulations" with the following additional limitations: (i) can "occasionally push, pull, or operate controls with the bilateral upper and lower extremities"; (ii) "can occasionally climb ramps and stairs"; (iii) "can never climb ropes, ladders, scaffolds"; (iv) "can occasionally balance, stoop, kneel, crouch, and crawl"; (v) "can never be exposed to unprotected heights, moving mechanical parts, operate a motor vehicle"; (vi) and can tolerate "only occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, [and] extreme heat."  AR 48.  The vocational expert replied that such an individual could perform at least three "light, unskilled" positions: an "assembler of small products," a "marker," or a "collator."  AR 48-49.

The ALJ then directed the vocational expert to assume that the individual was of plaintiff's age, education, and work experience and could "perform a full range of sedentary work as defined in the regulations."  AR 49.  The ALJ directed the vocational expert to further assume that the individual was subject to all the limitations listed in the first hypothetical, except that instead of being able to "occasionally" push, pull, or operate controls with the bilateral upper and lower extremities, this hypothetical person could "never" do so.  AR 49-50.  The vocational expert replied that such an individual could hold at least three "sedentary, unskilled" occupations: an "order clerk," an "addresser assistant," or an "electrical appliance assembler." AR 50.

The ALJ then posed three more hypotheticals.  The ALJ asked what, if any, occupations would be available to an individual with plaintiff's age, education, and work experience who could "perform the full range of sedentary work as defined in the regulations," had all the limitations set out in the first two hypotheticals, and in addition, (i) could "only occasionally, not never, handle, finger, and feel bi-manually"; or (ii) "would be off task twenty percent of the time

in an eight-hour day" in addition to normal breaks; or (iii) "would be absent from work two days a month," respectively.  AR 50-51.  The vocational expert replied that there were no occupations available for an individual with any of these three additional limitations.  *Ibid.*

Plaintiff's counsel then asked if there would be jobs available for an individual of the plaintiff's age and education if the individual needed to alternate between standing and sitting every thirty minutes.  AR 56-57.  The vocational expert replied that there was "probably" a sit/stand position available, as long as the time that the individual was off task to change position did not exceed eleven percent of an eight-hour workday.  AR 57.

Plaintiff's counsel then asked whether an individual could sustain full-time work if they had the same characteristics as in the former hypothetical, but with three added limitations: the individual (i) could lift no more than five pounds "on an occasional basis"; (ii) could tolerate only "occasional gross manipulations of objects, and reaching in all directions"; and (iii) "for three days out of the week, the individual would need to take unscheduled rest breaks for one to two hours at a time."  AR 57-58.  The vocational expert stated that such an individual would not be able to sustain any type of full-time work.  AR 58.

The ALJ deferred his decision until he could review medical records regarding the two years preceding the hearing and regarding the consultative examination that he ordered plaintiff to attend.  AR 59.

## IV.   The ALJ's Fact-Finding and Decision

The ALJ issued a decision on October 1, 2018.  AR 7.  The ALJ concluded that plaintiff was not disabled under Title XVI of the Social Security Act and denied her application for supplemental security income.  AR 10-17.  In reaching that decision, the ALJ proceeded through

the five-step analysis set forth in 20 C.F.R. § 416.920 and considered the hearing testimony as well as plaintiff's treatment records, which are summarized below.

### A. Physical Health Evaluations

Plaintiff was thirty-eight years old on her alleged onset date of disability and 39 years old on the date she filed her application for SSI. AR 150. Plaintiff was hospitalized from April 12 to April 16, 2015 after complaining of shortness of breath and chest pain for three days. AR 529. Plaintiff was diagnosed with pericardial effusion secondary to Systemic Lupus Erythematosus ("SLE") and was prescribed medication and instructed to follow up with her primary care provider in one or two weeks. AR 529-530.

On April 22, 2015, plaintiff saw Lydmila Rubinshteyn, M.D., and denied "any major complaints," including shortness of breath or joint or muscle pains. AR 589. Dr. Rubinshteyn reported that plaintiff had a range of motion "within normal limits" and no joint rashes or swelling. AR 589-90. Dr. Rubinshteyn diagnosed plaintiff with SLE and morbid obesity and instructed plaintiff to continue with her SLE medication. AR 590.

On June 11, 2015, rheumatologist Dr. Joseph Mosak evaluated plaintiff to assess her SLE. AR 285-89. Plaintiff complained of fatigue, decreased appetite, night sweats, mouth ulcers, color changes in her hands and feet, and occasional headaches, but denied joint complaints, muscle weakness, stiffness, swelling, rash, dizziness, or weakness. AR 285. Dr. Mosak found that plaintiff had a full range of motion, no joint swelling or tenderness, and a normal gait. AR 287. Dr. Mosak agreed that plaintiff's symptoms were "suggestive of lupus" but ordered blood tests to confirm the diagnosis and "re-start[ed]" plaintiff on Hydroxychlorquine. AR 288.

Plaintiff was hospitalized from December 23 to December 26, 2015, after complaining that she had suffered from shortness of breath for the previous five days.  AR 314-316, 544. Hospital personnel noted that plaintiff had been prescribed Hydroxychloroquine since April 2016 but had not been taking it.  AR 306, 546, 553.  Plaintiff was found to be five weeks pregnant. AR 546, 550.  Plaintiff underwent an echocardiogram and was found to have a right pleural effusion secondary to SLE.  AR 316, 553.  Plaintiff was advised that she should continue to take Hydroxychloroquine as it was "okay in pregnancy" and was discharged after reporting that she was "feeling well."  AR 553-54.

Dr. Mosak saw plaintiff again on January 27, 2016.  AR 290, 368.  Plaintiff reported that she had fatigue and arthritis and that her daily activities were moderately limited.  *Ibid.*

On April 11, 2016, plaintiff saw rheumatologist Dr. Tenedios-Karanikolas, a colleague of Dr. Mozak, for a follow-up visit regarding her SLE.  AR 364.  Plaintiff reported that her symptoms had improved, including her decreased appetite, fatigue, night sweats, mouth ulcers, color changes in the hands and feet, joint pain, and occasional headaches.  *Ibid.*  Dr. Tenedios-Karanikolas found that plaintiff's range of motion was normal in the left and right upper extremities bilaterally.  AR 365.  Dr. Tenedios-Karanikolas reported that plaintiff's SLE "seem[ed] quiescent" and that plaintiff should return in three months or as needed.  AR 366.

In May and June 2016, plaintiff had several visits with doctors, including to nephrologist Dr. Kermilde Jean-Jerome, M.D., for checkups of her blood pressure and adjustments of her blood pressure medications.  AR 643-655.  Plaintiff also underwent an induction of labor because of nonviable congenital abnormalities.  AR 291-300.  At a follow-up visit for uncontrolled blood pressure, plaintiff denied headache, chest pain, palpitations, or dizziness.  AR 291.

On August 5, 2016, plaintiff returned to Dr. Tenedios-Karanikolas for a follow-up regarding her SLE.  AR 359.  Plaintiff stated that her SLE symptoms had improved, including her fatigue, hypertension, and joint pain, and that her SLE did not limit her activities.  *Ibid.*  Dr. Tenedios-Karanikolas examined plaintiff and found that she had a normal gait, full strength and no swelling in her upper and lower extremities, and no rashes.  AR 361.

On August 23, 2016, plaintiff returned to Dr. Jean-Jerome, who assessed plaintiff for SLE, hypertension, and chronic kidney disease.  AR 656-57.  Plaintiff denied any shortness of breath, headaches, or joint stiffness or pain.  AR 657.  During a follow-up visit on September 20, 2016, Dr. Jean-Jerome found that plaintiff had full motor strength and sensation in the upper and lower extremities, and no tenderness.  AR 659.  Plaintiff again denied shortness of breath, headaches, or joint pain, and denied dizziness.  *Ibid.*  In the visit on August 23, and in another follow-up visit on October 18, 2016, Dr. Jean-Jerome noted that plaintiff's hypertension was "uncontrolled" due to plaintiff's non-compliance and that he "reinforc[ed]" that plaintiff should take her medications and adhere to a low-salt diet.  AR 656, 662.

On October 20, 2016, plaintiff saw Dr. Peter Scalici after reporting pain in her left foot.  AR 663-65.  Dr. Scalici ordered an x-ray and instructed plaintiff to use shoe inserts and purchase a more supportive sneaker.  *Ibid.*  On November 7, 2016, an x-ray of plaintiff's left foot revealed no fracture or dislocation but suggested soft tissue swelling at the first toe joint.  AR 487.

On November 22, 2016, at a follow-up visit with Dr. Tenedios-Karanikolas, plaintiff reported that she "fe[lt] good" but had "pain in her joints with prolonged standing."  AR 354.  She said she felt unable to participate in a five-day wellness program because she "gets fatigued" and has ankle swelling at the end of the day, and that her symptoms moderately limited her activities.  *Ibid.*  Dr. Tenedios-Karanikolas wrote a treatment note stating that plaintiff would

"need a modified schedule" from working five days a week.  AR 357.  Dr. Tenedios-Karanikolas noted that plaintiff had full strength and no swelling in her upper and lower extremities, no rashes, and a normal gait.  AR 356.

On January 6, 2017, plaintiff visited the OB/GYN clinic due to another pregnancy.  AR 600.  Plaintiff reported that she had hypertension and lupus, the latter of which she described as well-controlled.  *Ibid.*  A sonogram revealed fetal demise, and plaintiff underwent surgery for removal of the fetus later that month.  AR 476-77, 683-91.

On February 14, 2017, plaintiff returned for a follow-up and review of labs and medications with Dr. Jean-Jerome.  AR 692-94.  Plaintiff denied shortness of breath, fatigue, fever, headaches, joint pain, or stiffness.  *Ibid.*

On February 27, 2017, plaintiff returned to Dr. Scalici.  AR 698.  Plaintiff had not received shoe inserts and said that she had not taken the medicine prescribed because she had been pregnant and later miscarried.  *Ibid.*  Dr. Scalici gave her a steroid injection in her left foot and prescribed shoe inserts.  *Ibid*.

In March, April, and May 2017, plaintiff had follow-up appointments with Dr. Tenedios-Karanikolas and Dr. Jean-Jerome to monitor her lupus and laboratory results.  AR 350-51, 702-706.  At two of these appointments, plaintiff denied fatigue.  AR 350, 702.  During a visit on May 16, 2017, Dr. Jean-Jerome noted that plaintiff "sa[id] she has fatigue sometimes, but everything else is good."  AR 706.  During a visit on March 28, 2017, Dr. Tenedios-Karanikolas noted that plaintiff's SLE was "quiescent" and that plaintiff reported joint pain with prolonged standing and that her symptoms moderately limited her activities.  AR 350-53.

On October 31, 2017, plaintiff returned to Dr. Jean-Jerome, complaining of insomnia, decreased appetite, a transient facial rash, joint pain and shoulder pain, muscle aches, carpal

tunnel, shortness of breath, and chest pain with exertion.  AR 709-10.

On January 9, 2018, plaintiff returned to Dr. Tenedios-Karanikolas and denied any new complaints.  AR 346-47.  She reported fatigue, joint pain, an inability to engage in prolonged standing, and that her symptoms moderately limited her activities.  AR 347-48.  Dr. Tenedios-Karanikolas characterized plaintiff's lupus as quiescent and adviser her to avoid the sun.  AR 348.  On March 6, 2018, plaintiff visited Dr. Tenedios-Karanikolas and reported joint pain, pain with prolonged standing, and that her symptoms moderately limited her activities.  AR 343-44.  Dr. Tenedios-Karanikolas again characterized plaintiff's lupus as quiescent and advised her to avoid the sun.  *Ibid.*  He also recommended that plaintiff receive blood-work and renewed plaintiff's medications. *Ibid.*

On January 30, 2018, plaintiff saw Dr. Jean-Jerome with complaints of fatigue and headaches.  AR 712-13.  Plaintiff returned to Dr. Jean-Jerome on March 6, 2018, complaining of insomnia, dyspnea, fatigue, and blurry vision, and received referrals to a cardiologist and an ophthalmologist.  AR 715.  On July 17, 2018, plaintiff again saw Dr. Jean-Jerome, complaining of ankle and knee swelling, fatigue, anorexia, and blurry vision.  AR 722-23.

**B.  Consultative Examination**

On August 24, 2018, plaintiff attended a consultative examination with Dr. Ram Ravi, as ordered by the ALJ.  AR 396.  Plaintiff told Dr. Ravi that she lived with her spouse and three children and spent her time watching television, listening to the radio, and reading.  *Ibid*.  Plaintiff reported that she had "[p]ain in all joints, rated 8/10, sharp and constant." *Ibid*.

Dr. Ravi assessed plaintiff and determined that she was not in acute distress and that her gait was moderately antalgic.  AR 397-98.  He also determined that plaintiff had a full range of motion in her elbows, forearms, and wrists bilaterally, and that her joints were stable and

nontender.  AR 398.  Dr. Ravi diagnosed plaintiff with lupus, bilateral ankle pain, and hypertension.  *Ibid*.  Dr. Ravi advised plaintiff to go to the emergency room for further evaluation of her elevated blood pressure, bilateral lower extremity swelling, and calf tenderness. AR 399.  Dr. Ravi determined that the plaintiff had "no limitations sitting" and "[m]oderate limitations standing, walking, bending, pushing, pulling, lifting, and carrying due to lupus and bilateral ankle pain."  AR 398.

Dr. Ravi also completed a medical assessment of plaintiff's ability to do physical work-related activities.  Dr. Ravi reported that plaintiff could occasionally lift or carry up to twenty pounds, but never carry more than that.  AR 401.  Dr. Ravi found that plaintiff could sit six hours at a time and stand or walk for three hours at a time.  AR 402.  Dr. Ravi further found that plaintiff could sit for eight hours total in a workday and stand or walk for four hours total, and that she did not require the use of a cane to walk.  *Ibid*.  Dr. Ravi further found that plaintiff could occasionally reach, push, and pull, could frequently handle, finger, or feel objects with her hands, and could occasionally operate foot controls.  AR 403.  Dr. Ravi found that plaintiff could occasionally climb stairs and ramps, and could occasionally tolerate exposure to humidity, dust, odors, extreme cold and heat, and vibrations.  AR 404-05.  Dr. Ravi reported that plaintiff should never climb ladders or scaffolds, never balance, stoop, kneel, crouch, or crawl, and never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle.  *Ibid*.

### C.  The ALJ's Decision

Based on the hearing testimony and the medical record, the ALJ made the following findings:

- **Step One.**  Plaintiff had not engaged in substantial gainful activity since April 12, 2015, the alleged onset date.  *See* AR 12; 20 C.F.R. §§ 404.1571, 416.971.

- **Step Two.**  Plaintiff has the following severe impairments:  SLE; hypertension; and obesity.  *See* AR 12; 20 C.F.R. §§ 404.1520(c), 416.920(c).  These medically

determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.  *See* AR 12.

- **Step Three.**  Plaintiff's impairments did not meet the criteria that meets or medically equals the severity of one of the listed impairments provided by the Social Security Administration's regulations.  *See* AR 13; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  Plaintiff's SLE did not constitute a *per se* impairment because the evidence did not reflect at least two of the constitutional symptoms or signs of SLE, because "while the record shows some complaints of fatigue, the record overall indicates that it is occasional, and not severe." AR 13.  The ALJ added that the record did not reflect marked limitations in activities of daily living, social functioning, or the ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *Ibid.*

- **Step Four.**  Plaintiff had the "residual functional capacity" to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following additional limitations. Plaintiff (1) could never push, pull, or operate foot controls with the bilateral upper and lower extremities, (2) could frequently handle, finger, and feel bimanually, (3) could occasionally climb ramps or stairs, (4) could never climb ladders, ropes, or scaffolds, (5) could occasionally balance, stoop, kneel, crouch, or crawl, (6) could never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle, and (7) could have only occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, or extreme heat.  *See* AR 13; 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p.

- **Step Five.**  Plaintiff retained the ability to perform several jobs that existed in significant numbers in the national economy, including the three sedentary occupations of order clerk, addresser, and electronics assembler.  *See* AR 16-17; 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a.

Plaintiff sought review of the ALJ's decision from the Social Security Administration Appeals Council.  AR 5-6.  The council denied plaintiff's appeal on June 12, 2019, providing plaintiff with a final decision by the Commissioner.  AR 1.  Plaintiff then filed this action.

## STANDARD OF REVIEW

Claimants who are denied disability benefits by the Social Security Administration may seek judicial review.  42 U.S.C. § 405(g).  In reviewing a final decision of the Commissioner, the court does not "decide *de novo* whether a claimant was disabled" or take a fresh pass at the ALJ's five-step analysis under the Social Security Act.  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citations omitted).

Instead, the court's review is limited to two areas. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). First, the court reviews the Commissioner's decision for legal error. *Ibid.* This inquiry entails asking whether the claimant has had "a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990).

Second, the court reviews whether "substantial evidence" supports the Commissioner's decision. *Shaw*, 221 F.3d at 131 (quoting 42 U.S.C. § 405(g)); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). The Second Circuit has described substantial-evidence review as "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). Courts applying this standard will not disturb the Commissioner's factual findings if a reasonable mind could find "adequate" support for them. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Nevertheless, the Commissioner's findings must be supported by more than a "mere scintilla" of evidence. *Ibid.* To determine whether the Commissioner's determination is supported by substantial evidence, the reviewing court must "examine the entire record"— including "contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (citation and internal quotation marks omitted). When substantial evidence in the record supports the Commissioner's findings, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013).

After completing its review, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). Remanding to the Commissioner is appropriate when "the

Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the regulations." *Rose*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016). A remand is also appropriate "[w]here there are gaps in the administrative record." *Rosa*, 168 F.3d at 82-83 (citations and internal quotation marks omitted). The court retains discretion to remand the case with or without a rehearing. 42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff and the Commissioner have each moved for judgment on the pleadings. As explained below, the Commissioner applied the law correctly and made factual findings that were supported by substantial evidence. *Shaw*, 221 F.3d at 131 (quoting 42 U.S.C. § 405(g)). Plaintiff's arguments to the contrary lack merit.

### I.    The ALJ's conclusion that plaintiff is not disabled based on her physical limitations is supported by substantial evidence.

The ALJ did not err in concluding that the plaintiff was not disabled. In reaching that conclusion, the ALJ considered the entire medical record, including the four requisite categories of evidence (**i**) "the objective medical facts"; (**ii**) "diagnoses or medical opinions based on such facts"; (**iii**) "subjective evidence of pain or disability testified to by the claimant or others"; and (**iv**) "the claimant's educational background, age, and work experience." *Brown*, 174 F.3d at 62. The ALJ first noted plaintiff's age and education level. AR 14. The ALJ then acknowledged that plaintiff had lupus, reported joint pain, which she said affected her ability to stand or walk; took medications that sometimes caused drowsiness or dizziness, and experienced insomnia, among other symptoms. *Ibid*. The ALJ nonetheless concluded that plaintiff retained the residual functional capacity to perform sedentary work with additional limitations based on the record as a whole. *Ibid*. The ALJ observed that plaintiff's "lupus ha[d] been stable and quite well-controlled with medications," that plaintiff "reported her symptoms only moderately limited her

activities," that she "ha[d] complained of occasional fatigue at times, but has consistently denied other symptoms," and that her physical exams "ha[d] consistently been normal." AR 15. The ALJ also addressed plaintiff's hypertension but observed that it was "relatively asymptomatic and also would not impose further limitations beyond" those set forth in the ALJ's recount of plaintiff's residual functional capacity. *Ibid.*

The ALJ acknowledged that plaintiff testified at the hearing that she had "very significant limitations with daily activities." *Ibid.* The ALJ found, however, that plaintiff's testimony was inconsistent with her treatment notes, which show that she consistently denied severe symptoms and reported "no more than a moderate impact upon functioning." *Ibid*. Courts in this circuit have upheld an ALJ's finding that a claimant is not disabled, even where the claimant testifies to having severe limitations, if that testimony is inconsistent with the record as a whole. *See, e.g.*, *Grygielko-Sanchez v. Comm'r of Soc. Sec.*, No. 16-CV-5357 (NG), 2018 WL 6335412, at *8 (E.D.N.Y. Dec. 4, 2018) (affirming ALJ's finding of non-disability despite plaintiff's testimony to a higher level of incapacitation because it "is not otherwise reflected in the record"); *Puente v. Comm'r of Soc. Sec.*, 130 F. Supp. 3d 881, 892-93 (S.D.N.Y. 2015) (holding that ALJ properly found plaintiff's testimony about the severity of his ailments to be unsupported by the medical record, and that the ALJ properly relied on the testimony of a vocational expert that plaintiff was not disabled).

The ALJ also adequately considered the opinions of the medical sources in the record. In determining a claimant's residual functional capacity, the ALJ considers the record as a whole and is not required to accept the opinion of any medical expert in its entirety. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to

weigh all of the evidence available to make an residual functional capacity finding that was consistent with the record as a whole." (citation omitted)).  In weighing a medical opinion, the ALJ must consider, among other factors, "the supportability of the medical opinion, particularly medical signs and laboratory findings," "the consistency of the medical opinion with the record as a whole," and "other factors that may support or contradict the opinion."  20 C.F.R. § 416.927(c); *see Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 557 (2d Cir. 2020) (citing 20 C.F.R. § 416.927(c)).

Here, the ALJ gave "significant weight" to the opinion of Dr. Ravi, plaintiff's sole consultative examiner, who found that plaintiff would be able to perform light work with limitations.  AR 15, 396-99.  The ALJ explained that Dr. Ravi's finding of non-disability was consistent with the medical record, given that plaintiff had denied frequent lupus flares, denied chronic symptoms beyond occasional fatigue, and reported only moderate limitations in daily functioning.  AR 15-16.  Moreover, the ALJ ultimately limited plaintiff's residual functional capacity to sedentary work—an even more restricted category of work than Dr. Ravi recommended—so as "to accommodate [plaintiff's] complaints of occasional fatigue noted in the medical records."  *Ibid.*

The ALJ also adequately considered Dr. Tenedios-Karanikolas's treatment note stating that plaintiff was unable to work five days a week and needed a modified schedule.  The ALJ gave this opinion "little weight" because it was inconsistent with plaintiff's treatment records, again noting that plaintiff denied frequent lupus flares or chronic symptoms beyond occasional fatigue, and consistently reported moderate limitations.  AR 16.  Courts in this circuit have upheld an ALJ's determination that a plaintiff is not disabled where a medical source opined that the plaintiff could not work, but that medical source was inconsistent with the record as a whole.

*See, e.g.*, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record." (citation omitted)); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (affirming the ALJ's decision not to credit a treating physician's opinions because they were not supported by objective medical evidence); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling.  And the less consistent that opinion is with the record as a whole, the less weight it will be given." (citation omitted)).  The ALJ's decision is supported by substantial evidence.

## II.   Plaintiff's arguments that the ALJ's decision is inadequately supported by substantial evidence are unavailing.

Plaintiff argues for remand on several grounds, but none are persuasive.  Plaintiff first argues that the ALJ "did not explain" whether he found credible plaintiff's hearing testimony that she experienced dizziness and drowsiness and needed daytime naps of up to two hours.  Pl.'s Mem. of L. in Supp. of Mot. for J. on Pleadings 21 ("Pl.'s Br.") (Dkt. #10).  The regulations require a two-step process for evaluating the credibility of a claimant's assertions about her limitations.   First, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.  20 C.F.R. § 404.1529(b).  Second, the ALJ must consider "the extent to which [claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence" on the record.  20 C.F.R. § 404.1529(a).  Here, the ALJ met both requirements.  The ALJ first found that plaintiff had three impairments—SLE, hypertension, and obesity—and that these impairments "could reasonably be expected to cause some of [plaintiff's] alleged symptoms."

AR 12; *see* AR 14.  But at the second step, the ALJ found that while plaintiff testified at the hearing that she suffered "very significant limitations with daily activities," this testimony "[was] not consistent with [plaintiff's] denial of severe symptoms reflected in the treatment notes, or her consistent reports that her symptoms have no more than a moderate impact upon functioning." AR 15.  The Second Circuit has stated that "the ALJ is required to take the claimant's reports of . . . limitations into account but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); *see* 20 C.F.R. § 404.1529(a); *e.g.*, *Puente,* 130 F. Supp. 3d at 893-95 (S.D.N.Y. 2015) (holding that the ALJ properly considered evidence in the medical record that was inconsistent with claimant's statements about the severity of his complaints); *Roman v. Colvin*, 278 F. Supp. 3d 671, 677 (W.D.N.Y. 2015) (finding that plaintiff's statements regarding the intensity and limiting effects of her symptoms are inconsistent with her prior statements, actions, and medical evidence); *Roettinger v. Colvin*, No. 14-CV-1135 (ADS), 2015 WL 4897525, at *12-22 (E.D.N.Y. Aug. 14, 2015) (finding substantial evidence to support the ALJ's conclusion that claimant's testimony as to the severity of her symptoms was not credible in light of the objective medical evidence).  The ALJ therefore adequately considered plaintiff's testimony regarding her dizziness and drowsiness.

Second, plaintiff argues that the ALJ's decision was erroneous because "prolonged or extreme fatigue [is a] symptom of lupus," with which plaintiff was undisputedly diagnosed.  Pl's Br. 21; *see* AR 15.  But a diagnosis of SLE, without more, does not require a finding of disability, and courts in this circuit have consistently upheld a finding of non-disability even where a plaintiff is undisputedly diagnosed with SLE.  *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1,

§ 14.02 (explaining the circumstances under which SLE qualifies as disabling); *e.g., Bahaga v. Comm'r of Soc. Sec.*, No. 19-CV-05014 (KPF) (RWL), 2020 WL 5755020, at *6-8 (S.D.N.Y. July 2, 2020) (holding that plaintiff was no longer disabled because her lupus, among other ailments, had stabilized); *Burton v. Berryhill*, No. 14-CV-7525 (ADS), 2019 WL 1936726, at *3-10 (E.D.N.Y. May 1, 2019) (holding that plaintiff was not disabled despite a lupus diagnosis, among other ailments); *De Gonzalez v. Berryhill*, No. 16-CV-06723 (JMA), 2018 WL 6834474, at *7-12 (E.D.N.Y. Dec. 28, 2018) (holding that plaintiff's impairments due to lupus did not medically equal a listed impairment). Here, the ALJ acknowledged plaintiff's SLE diagnosis but found that "the record overall indicates that [plaintiff's fatigue] is occasional, and not severe" and that "the record does not show marked limitations in activities of daily living, social functioning, or the ability to complete tasks." AR 13. Plaintiff's treatment notes consistently describe plaintiff's lupus as clinically "quiescent." *See* AR 344, 348, 362, 366, 371. And plaintiff often reported that her fatigue had "improved," AR 276, 359, or denied fatigue altogether, AR 657, 693, 704, 707, 709. The ALJ did not err by basing his residual functional capacity determination on the record as a whole rather than on the fact of plaintiff's lupus diagnosis.

Third, plaintiff suggests that the ALJ erred in light of Dr. Tenedios-Karanikolas's "judgment that her fatigue would interfere with her ability to persist at a wellness program five days a week." Pl.'s Br. 21; *see* AR 350, 354, 357. In fact, the treatment notes indicate only that plaintiff *reported* that she was unable to participate in such a program—not that Dr. Tenedios-Karanikolas evaluated her suitability for the program. *See* AR 350, 354, 357. To the extent that plaintiff challenges the ALJ's decision to give "little weight" to Dr. Tenedios-Karanikolas's statement that plaintiff should have a modified work schedule, that challenge is unpersuasive for

reasons already discussed above—namely, that the ALJ has the discretion to give little weight to medical opinions that are inconsistent with the record as a whole. *See Halloran*, 362 F.3d at 32; *Veino*, 312 F.3d at 588. Here, Dr. Tenedios-Karanikolas's treatment notes from the same time period describe plaintiff's SLE as "quiescent" and her fatigue as "improved." AR 352, 357, 362; *e.g.*, *Arbello v. Comm'r of Soc. Sec.*, No. 18-CV-982 (MKB), 2019 WL 1384094, at *9-11 (E.D.N.Y. Mar. 27, 2019) (affirming the ALJ's decision not to give controlling weight to a physician's opinion because it conflicted with the physician's own treatment notes that suggested plaintiff's lupus was improving with medication); *Burton*, WL 1936726, at *3-10 (concurring with the ALJ that the record lacked sufficient medical evidence to justify affording controlling weight to a doctor's opinion that claimant had severe limitations due to lupus when it was contradicted by the doctor's own treatment notes). Dr. Tenedios-Karanikolas's treatment notes do not warrant remand.

Finally, plaintiff argues that the ALJ erred because plaintiff "regularly and consistently complained of fatigue." Pl.'s Br. 23. But this argument misunderstands the relevant inquiry: "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49; *e.g.*, *Morales v. Berryhill*, 484 F. Supp. 3d 130, 149 (S.D.N.Y. 2020) (holding that the ALJ's residual functional capacity finding was supported by substantial evidence "even if there was also substantial evidence to support a contrary conclusion."). Plaintiff also points to the fact that there are multiple instances in the record showing that she complained of fatigue, but just one instance when plaintiff reported "occasional fatigue." Pl.'s Br. 22 (citing AR 719-20); *see* AR 13. But the ALJ's conclusions find support beyond the number of times plaintiff used the word "occasional" in reporting her

symptoms, because the record overall shows that plaintiff often reported no fatigue at all or improved fatigue.  Indeed, plaintiff concedes this fact in her brief.  Pl.'s Br. 22-23 ("There were times when [plaintiff] reported no fatigue or improved fatigue." (citing AR 276, 359, 657, 664, 693, 704, 707, 709)).  Accordingly, the ALJ's findings about plaintiff's fatigue were supported by substantial evidence.

## CONCLUSION

The ALJ's conclusion was legally sound and supported by substantial evidence. Accordingly, plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's motion is granted.  The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner and dismiss the complaint.

SO ORDERED.

_/s/ Rachel Kovner_          
RACHEL P. KOVNER
United States District Judge

Dated: June 19, 2022
        Brooklyn, New York